OAKLAND MFG. CO. v. F. C. LINDE CO.   (No. 5550.)

(Supreme Court, Appellate Division, First Department.   May 29, 1914.)

1. REPLEVIN (§ 8*)—ACTION—RIGHT TO MAINTAIN.

To maintain replevin, plaintiff must prove that it was entitled to pos-session of the goods replevied at the time of the commencement of the action.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 45–68; Dec. Dig. § 8.*]

2. REPLEVIN (§ 69*)—ACTION—EVIDENCE.

In replevin, where defendant generally denied plaintiff's allegations of ownership and right to possession, defendant may, as showing that plain-tiff was not entitled to possession, introduce evidence that plaintiff's agent had deposited the goods in defendant's warehouse, receiving storage cer-tificates therefor, and had pledged such certificates to a third person as security for loans.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 257–279; Dec. Dig. § 69.*]

3. PRINCIPAL AND AGENT (§ 123*)—ACTION—EVIDENCE—SUFFICIENCY.

In replevin for goods consigned to plaintiff's agent and stored with de-fendant, evidence *held* to show that plaintiff's agent had authority to pledge such goods.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. § 123.*]

4. PRINCIPAL AND AGENT (§ 151*)—REVOCATION OF AUTHORITY—EFFECT.

Where an agent had been authorized to pledge goods consigned to him for sale, the revocation of his authority, to be effective as to persons who had already dealt with the agent, must be communicated.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 564–566; Dec. Dig. § 151.*]

5. FACTORS (§ 52*)—PLEDGE BY FACTORS.

Under Factors' Act (Laws 1830, c. 179) § 3, providing that every agent intrusted with the possession of goods for sale or for advances to be ob-tained thereon must be deemed the true owner so as to give validity to any contract made with a third person for the sale of such goods or for the advancement of money thereon, a principal, who consigned goods to an agent for sale and for the purpose of obtaining advances thereon is not, as against a warehouseman with whom the goods were stored and with whose president the agent without authority pledged the warehouse receipts, entitled to possession of the goods.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 83, 84; Dec. Dig. § 52.*]

6. ELECTION OF REMEDIES (§ 3*)—EFFECT.

Where an agent to whom goods had been consigned, and who had stored them with a warehouse company, wrongfully pledged the goods, deliv-ering the warehouse receipts to a third person, the act of the principal in bringing against the agent an action for conversion was an election of remedies which barred replevin against the warehouseman, under Laws 1902, c. 608, § 1, providing that after an action for conversion of a per-sonal chattel is brought by the claimant against the depositor or holder of a warehouse receipt, the warehouseman may, at any time, deliver the chattel to the holder of the receipt.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Judgment on Report of Referee.

Action by the Oakland Manufacturing Company against the F. C. Linde Company. From a judgment entered upon report of a referee, defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

Eugene Lamb Richards, of New York City, for appellant.

Walter L. Post, of New York City, for respondent.

INGRAHAM, P. J. The action was in replevin to recover possession of certain merchandise, alleged to have been stored with the defendant, a corporation engaged in the storage business in the city of New York. The plaintiff was a foreign corporation, incorporated under the laws of the state of Maryland and located in the city of Baltimore in that state. The defendant was a corporation, organized under the laws of this state and engaged in the storing and housing of merchandise in the city of New York. The complaint alleges that the plaintiff was the owner of certain merchandise which had been consigned by the plaintiff to one William H. Bayne, as agent of the plaintiff, and by him placed in the storage warehouse of the defendant. The answer, after denying the allegations of the complaint in relation to these chattels, alleges that the plaintiff had brought an action against the said Bayne for conversion, detention, and wrongful withholding of the said chattels mentioned in the complaint of the plaintiff herein, in which a judgment was entered against said Bayne and in favor of plaintiff, and that the said judgment was a bar to this action. To this answer the plaintiff interposed a reply, and at the same time demurred to the defense that the judgment in the action of the plaintiff against the said Bayne was a bar to the prosecution of this action, upon the ground that the same was insufficient in law upon the face thereof. The action was referred to a referee to hear and determine, and the referee found that at the time of the commencement of this action, on or about January 23, 1904, the defendant was in possession of certain woolen goods therein described; that the authority of the said Bayne was limited solely to the procurement of orders for the plaintiff, and he was not authorized to make sales of the woolens manufactured by the plaintiff, or to have any supervision, control, or authority thereover, or authority in relation to the conduct of the business of the plaintiff; that the said goods were found on storage with defendant, who had issued warehouse receipts to Bayne without the authority of the plaintiff, and that loans had been secured thereon by the said Bayne for his own personal benefit, and without the sanction and authority from the plaintiff, which received no benefit from said loans; that the said loans were made personally by one Gibson, president of the defendant, to the said Bayne; that the title to the said bales of woolen goods described in the said complaint and enumerated therein was at all times absolutely in the plaintiff, and at no time did the plaintiff authorize or empower the said Bayne to exercise dominion or ownership over said bales, or to deposit the same with the defendant, or any other person, as security; or to act in any respect in regard

thereto other than as custodian of said bales for the plaintiff; that neither the defendant nor any person other than the plaintiff has acquired any title to or lien of any nature whatsoever upon or to the said bales described in the complaint and replevied by the sheriff, but the defendant now wrongfully withholds from the plaintiff said bales of woolen goods; that the total value of the goods in question was $4,-854, and directed that the plaintiff recover from the defendant possession of the goods enumerated in the report or recover from the defendant the sum of $4,584 and $2,016.96 damages for the detention thereof. Upon that report judgment was entered in favor of the plaintiff, from which the defendant appeals.

[1, 2] The action being in replevin, the plaintiff was bound to prove that it was entitled to the possession at the time of the commencement of the action. The answer denied these allegations of the complaint, and upon the trial defendant offered evidence, which was received over objection by the plaintiff as not within the issues, that Bayne had deposited these goods in the defendant's warehouse and received storage certificates therefor, which had been pledged to Gibson, the president of the defendant, as security for loans of money to Bayne, which certificates were outstanding in the possession of Gibson, who claimed to hold them as security for the advances that he had made. The first question presented is whether under a general denial of the ownership and right to possession of the plaintiff the defendant was entitled to prove any fact which would tend to disprove the right of the plaintiff to the possession of the chattels, which were the subject-matter of the action. It is settled in this state that, in an action for the recovery of personal property, the issue tendered by the plaintiff is the ownership of the property and the right to the immediate possession thereof, and under a denial of that allegation the defendant could prove any fact which would tend to disprove the plaintiff's right to possession at the time of the commencement of the action, and to meet the plaintiff's allegation of the right to immediate possession the defendant was entitled to prove the right of possession, either in the defendant or a third party. Griffin v. Long Island R. R. Co., 101 N. Y. 348, 4 N. E. 740; Siedenbach v. Riley, 111 N. Y. 560, 19 N. E. 275.

[3, 4] The question then presented is whether upon the whole evidence Bayne had express or implied authority from the plaintiff to pledge the plaintiff's goods in his possession as security for a loan which on its face was made to Bayne as the pledgor. If he had such authority, the fact that he misappropriated the money borrowed would, of course, not affect the right of the pledgee to hold the goods as security for the money loaned. The referee finds that the authority of the said Bayne was limited solely to the procurement of such orders for the plaintiff; that the said Bayne was not authorized to make sales of the woolens manufactured by the plaintiff, or to have any supervision, control, or authority thereover, or authority in relation to the conduct of the business of the plaintiff. If this finding is sustained by the evidence, of course it follows that Bayne's deposit of the goods with defendant and his pledging the warehouse receipts therefor was

unauthorized, and the pledgee had no lien upon the goods as security for his loans to Bayne.

Plaintiff, a foreign corporation, having its principal place of business in Baltimore, Md., employed Bayne as its agent in the city of New York. As such agent he, with knowledge and consent of the plaintiff, received the possession of this merchandise. Within his conceded authority, it was his duty to store the merchandise in some suitable warehouse, and to hold the same subject to the orders of the plaintiff. The deposit of goods, therefore, in the defendant's warehouse, and taking the storage warehouse receipts therefor in his own name, was not a violation of his duty to his principal, and defendant was entitled to hold those goods until the production and surrender of the warehouse receipts. Mr. Hooper, who was treasurer and general manager of the plaintiff during the period in question, and who seems to have had charge of the plaintiff's business, testified that the plaintiff had brokers in Chicago, St. Louis, Cincinnati, Baltimore, and New York; that they were authorized to make sales of the goods; that the witness gave them the price that they could put on the goods, and what they could sell them for; that Bayne was the plaintiff's broker in New York, and, after saying that Bayne never had possession of any of the plaintiff's goods, the witness testified that Bayne had all of those goods in question in his charge. The witness testified that when a sale of goods was made by an agent or broker, the plaintiff received the money from the purchaser; that he asked Bayne to sell plaintiff's goods and remit the money, but he never authorized Bayne to sell the goods referred to in his preceding testimony and remit the money to plaintiff. Further the witness testified: "We authorized Mr. Bayne to store some of our goods in the Mercantile Warehouse Company"; that in the year 1903 Bayne had authority from the plaintiff to negotiate loans upon any goods in his control which had been manufactured by the plaintiff. There was then introduced in evidence a series of letters from the plaintiff to Bayne in relation to his business relations with the plaintiff. On February 16, 1903, the plaintiff wrote to Bayne:

"We have determined to allow you to dispose of this stock at the best market price, reserving to ourselves the right to recall this arrangement at any time we see fit for the protection of ourselves. We have made you well aware of the conditions we are laboring under now and have been for the last five seasons, and shall expect you to use your best efforts and judgment for the purpose of obtaining the best results for this company."

On June 12, 1903, plaintiff wrote to Bayne:

"Let there be as little delay as possible in effecting loans upon the balance of the stock shipped you from here on May 30."

On June 15, 1903, plaintiff wrote to Bayne:

"We have yours of June 13th and note the same. Loan $5—We also beg to acknowledge receipt of memorandum for loan $5 June 11th and check for proceeds."

On June 18, 1903, plaintiff wrote to Bayne, acknowledging receipt of orders, some of which they accepted and some of which they rejected, and saying:

"Wire us if stock of style 1552 is received and in time to consummate loan. this week."

### On July 1st, 1903, the plaintiff wrote to Bayne:

"Loans—We note all you have to say in regard to effecting loans on the balance of the stock which we still have. We wired you this a. m. as follows: 'Remove and deliver all goods sold. Remit balance here but quickly,' which we now beg to confirm. Be kind enough to facilitate the effecting of these loans and remit the proceeds to us as rapidly as possible. We have some matters here that we are anxious to settle up."

This letter also contained the statement:

"How about the sales for cash made by you? Any prospect of settlements?"

### On July 2, 1903, plaintiff wrote to Bayne:

"We have yours of July 1st, also the inclosures. * * * Remittances— We note also that you have received remittances from the N. Y. Balton Trans. Co. of $215.16; Gordon, Cohen & Co., $163.13. * * * Loans—We note all you have to say in regard to effecting loans in New York and the delays in attending to the same, all of which we regret very much. According to the records that we have here you are due to take up the Warehouse Co. loans that all amount to $2,707. Please note our memorandum herewith inclosed to this effect and let us know if the same are correct. Against these loans to be refunded you have goods in New York to hypothecate for the additional loans which should net you $6,000—note the following statement."

Then followed statement of the goods which Bayne had belonging to the plaintiff, and continued:

"Leaving a balance to be remitted to us of something over $3,000. Be kind enough to push the consummation of those loans and deliver all of these goods already sold as rapidly as possible and please inform us when the same is accomplished."

### On July 3, 1903, plaintiff wrote to Bayne:

"Loans—We note memorandum of proposed loans and hope that you will be able to accomplish the same earlier than the date stated. We inclosed you yesterday memorandum of goods you will have on hand available for loans proposed and the amount of money that you should be able to obtain upon the same. We hope very much that you coincide with our statement."

### On June 30, 1903, plaintiff wrote Bayne:

"Loans—We note your letter in regard to loans you contemplate making but we return you herewith copy of bales which you propose to make a loan on of $4,144.39. If you will look at your records a moment you will note that these bales were all borrowed upon in your loan of June 24th—23 bales of style 1552 that were shipped from Glen Morris, June 15th, and so stated on that invoice. This invoice together with the one for which 17 bales declined by the Dutchess Mfg. Co. were simply sent you for your own satisfaction so you could keep trace of the bales and the contents. The other three invoices, however, for stock on styles 2001, 2091, and 2210 are invoices for stock which we desire you to have loans made upon."

### On July 15, 1903, plaintiff wrote Bayne:

"Memorandum of loan of July 13th—We note your memorandum of loan of July 13th—13 bales of woolens, invoice value $2,270.00. You failed to inclose us a memorandum of the bales upon which this loan was negotiated. We note further that we are paying interest and commission on the bale 92X not in the warehouse—$142.00."

On June 8, 1903, plaintiff wrote to Bayne:

"We do not understand why you, in selecting your bales upon each to make loans do not confine yourself first to the hypothecation of all the pcs. of one style, and so on through the list. When may we expect check for the third loan?"

On June 16, 1903, plaintiff wrote to Bayne:

"Application for loan—We notice your application for loan on additional bales of stock. Unless you are more careful in stating the bales that you prefer to borrow upon, we will not be able to keep our records straight with you. In your pen and ink memorandum you enter bale 94X as one of the bales included in this loan, where as a matter of fact, this bale of goods has been charged, billed and delivered to Ederheimer, Stein & Co., but we figure out from the press copy of the memorandum that you furnished to the Mercantile Warehouse Co. that this should be bale 90X, although the copy is rather blurred and we do not feel at all satisfied that we are correct. Please straighten us out as to this bale—whether it is bale 90X or bale 94X. This will leave you 6 bales or 36 pcs. of overcoatings yet to borrow upon. Do you propose to substitute these bales for some of those you are withdrawing? You make no mention as to how this business is to be consummated—whether we are to send you a check to cover the goods you are taking out of the loan, or whether you propose to substitute other free stock for the ones you are withdrawing."

On July 6, 1903, plaintiff wrote to Bayne:

"Changing of loan—We note all you have to say upon this point, but fail to see how you should be in distress for money when you still have the stock of 1502 declined by the Dutchess and the stock of the three styles of diagonals 2001, 2091 and 2210. This should give you something over $6,000 new money to manoeuver with. We think maybe you have lost some of your records and had better go slowly and get yourself straightened out and make a final report to us of the conditions. See our previous letter to you in regard to stock that you will still have available for making loans."

On July 13, 1903, plaintiff wrote to Bayne:

"Statement of loan account—We also note statement you render of the loan account and must confess that we have not been able to-day to arrive at an intelligent understanding of the same. We will take the subject up at once and try to figure it out and report to you. You should be able, however, to negotiate loans on all the free stock you are holding certainly this week and early in the week which will give you ample funds with which to reimburse yourself and remit the balance to us."

Other letters from plaintiff to Bayne are in the record, constantly referring to loans to be obtained by Bayne, urging Bayne to make the loans and remit the proceeds either to plaintiff or to use them in paying other loans, which Bayne had received upon plaintiff's property, and calling his attention time and again to what was called the "free stock" of plaintiff's goods in Bayne's hands upon which he could obtain loans.

In the face of this express authority it is difficult to see upon what ground the referee based the finding that Bayne never had any authority from plaintiff to sell plaintiff's goods in his hands or to make loans thereon for the plaintiff. The explanation of the writer of these letters is very confused and very unsatisfactory. He seems to insist upon it that, while Bayne had authority to make loans upon all the other stocks of plaintiff's goods in his hands, Bayne had no authority

to make loans on the stock of goods involved in this action. But in view of this correspondence such a claim is unjustified. The correspondence alone conclusively shows that Bayne had authority to sell the goods manufactured by the plaintiff, to collect the proceeds and remit to the plaintiff, to pledge the goods for loans for plaintiff's account, and, this being so, it seems to me clear that Bayne had authority to pledge these goods, held by him for the plaintiff, for loans for the plaintiff's account. The record clearly shows that Bayne, in making loans with Gibson, was acting under this express authority, and the fact that Bayne appropriated the proceeds of these loans to his own use, instead of remitting to the plaintiff, cannot affect the authority of Bayne to make loans.

The plaintiff claims that Bayne's agency terminated on August 30, 1903, and that immediately thereafter repeated demands were made upon him for the return to the plaintiff of all of its property then in his possession. Part of the property held by Bayne was turned over to plaintiff's substituted agent. But, if Bayne had actual authority to make these loans, and no notice was given to the defendant or Gibson of the termination of his authority, I do not see how the defendant or Gibson can be held responsible. The only evidence as to restricting the authority of Bayne that I can find in this record is the testimony of plaintiff's treasurer and general manager that some time in August, 1903, the accounts of Bayne had been transferred to other agents in New York, and that on September 7, 1903, Bayne was still acting as agent for the plaintiff. On September 7, 1903, plaintiff wrote to Bayne and referred to outstanding loan with Gibson, the president of defendant and who had made the other loans, on which there was said to be due $250, and offered to remit New York draft to retire the loan upon receipt of certified copy of the balance due. Finally there was a contract made, dated November 9, 1903, which was introduced in evidence, and which apparently settled the accounts between Bayne and the plaintiff. In that contract Bayne agreed to turn over, transfer, and deliver to the substituted agents all goods and property of every nature and description whatsoever, which he may hold, control, or have knowledge of, belonging to the plaintiff, and the substituted agents agreed upon the delivery simultaneously therewith to pay to Bayne the sum of $1,220.41, which was in full settlement of all charges, claims, credits, or rights of the said Bayne against the plaintiff. It was further agreed that Bayne was to divulge and make known to the plaintiff all of the goods in his possession or under his order or control which have been, or to his knowledge may be, returned to him on account of any sales made by him, and that he has no knowledge of the return of any goods on any outstanding orders other than those enumerated and mentioned therein, and this delivery was to take place on November 13, 1903, and upon the mutual delivery and interchange of goods and the said bank draft for $1,220.41, the said Bayne then gave a general release to the plaintiff, and the plaintiff gave a general release to the said Bayne. Annexed to that agreement was a schedule of the stock of goods that Bayne held for the plaintiff. Certainly until this contract of November 9, 1903, was executed, there was no revocation

of any express authority that Bayne had to act for plaintiff in relation to its property and the original loans made by Gibson seem to have been made prior to this time. I think, therefore, the finding of the referee that Bayne had not authority to sell and deliver plaintiff's goods in his charge, and had no authority to receive payment and remit proceeds, and had no authority to make loans and deposit the goods as security therefor, is without evidence to sustain it, but is directly contrary to the positive evidence that Bayne had such express authority.

[5] I think this case comes directly within what is commonly known as the "Factors' Act" (chapter 179, Laws 1830), § 3, of which provides:

"Every factor or other agent, intrusted with the possession of any bill of lading, customhouse permit, or warehouse keeper's receipt for the delivery of any such merchandise, and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument or other obligation in writing given by such other person upon the faith thereof."

The title given by such factor or agent, either on sale of the property or pledge of the property as security for a loan, has been upheld by the courts of this state. Cartwright v. Wilmerding, 24 N. Y. 524; New York Security & Trust Co. v. Lippman, 157 N. Y. 551, 52 N. E. 595; Freudenheim v. Gutter, 201 N. Y. 94, 94 N. E. 640. I think, therefore, the defendant, having received these goods on storage, and having given warehouse receipts therefor, and Gibson having acquired a lien thereon by advancing money to Bayne on said warehouse receipts, had the right to the possession of these goods, and the plaintiff must fail in his action.

[6] But I am also of the opinion that the special defense set up in the answer was sufficient upon the face thereof to defeat the plaintiff's claim. The defendant set up as a bar to the plaintiff's action the fact that after the transaction in question, the plaintiff commenced an action in conversion against Bayne to recover the value of these goods, alleging as a basis of the conversion the pledging of the goods by the said Bayne to Gibson as security for loans, and judgment was entered herein against Bayne. In regard to this special defense the plaintiff adopted a novel procedure. It first demurred to the special defense as insufficient in law upon the face thereof, and, having thus demurred, it interposed a reply, which, referring to this special defense—

"denies so much of the allegations of paragraph 7, of the amended answer of defendant herein as alleges that there is now pending between the plaintiff and William H. Bayne, an action by this plaintiff, on the same alleged cause of action, and involving the same issues as are involved herein."

The other allegations of the special defense were admitted, and, upon the pleadings in this condition, the action was referred to a referee to hear and determine. This would involve the reference of the issue of law raised by the demurrer and the only allegation of the special defense not admitted by the demurrer, i. e., was that an action then pending between the plaintiff and the said Bayne on the same al-

leged cause of action, involving the same issues as are involved herein? The complaint in that action was admitted in evidence, but was not printed in the record, but the fact was admitted that an action was commenced in the Supreme Court of the state of New York, by the plaintiff against the said Bayne, for the conversion, detention, and wrongful withholding of the same chattels mentioned in the complaint of the plaintiff herein and the said complaint in said action against the said Bayne is based upon the same alleged cause of action, and involves substantially the same alleged issues as in this action against the defendant herein in which plaintiff had judgment. Bayne was in possession of the plaintiff's personal property. He converted it to his own use by pledging it as security for loans made to himself. The plaintiff then had an election, to claim the property in replevin from the defendant, or from a third person whose possession thereof was wrongful, or to proceed against Bayne as for a conversion, and to recover from him the value of the property with interest as damages for the conversion. By electing to hold Bayne as for a conversion of the property, and to hold him liable for the damages sustained by reason of its conversion, plaintiff's title to the property was divested and it could not maintain replevin therefor. Section 1, c. 608, Laws 1902. In fact it has been held that, when such an action has been commenced, the election to treat the action as a conversion divested the owner of the property of his interest therein, and he then had elected to treat the convertor as the owner of the property, and to confine his right to relief to a personal judgment against the person who was guilty of the conversion.

The record in this case is very involved, and it is with considerable difficulty that the facts can be ascertained. It is clear that the judgment must be reversed; but, in view of the condition of the record, instead of dismissing the complaint, a new trial will be ordered.

The judgment appealed from is therefore reversed, with costs to the appellant to abide the event, and a new trial is ordered before a new referee to be named in the order to be settled on notice.

McLAUGHLIN, LAUGHLIN, and SCOTT, JJ., concur. HOTCHKISS, J., concurs on second ground.