THE EQUITABLE TRUST COMPANY OF NEW YORK, Respondent, *v.* MAJESTIC HOTEL COMPANY, INC., Appellant.*

First Department, December 20, 1932.

*Jack Lewis Kraus, II,* of counsel [*Herbert Spencer Leman* and *Sidney M. Markley* with him on the brief; *Levy, Kraus & Leman,* attorneys], for the appellant.

*A. Donald MacKinnon* of counsel [*William Dean Embree* and *Andrew Jackson* with him on the brief; *Milbank, Tweed, Hope & Webb,* attorneys], for the respondent.

SHERMAN, J. The judgment is in replevin and determines that plaintiff was entitled to certain personal property upon premises owned by defendant, under a chattel mortgage asserted to have been given by the tenant Richbroson Hotel Company, Inc., to

* Affd., 262 N. Y. ——.

plaintiff to secure the payment of an indebtedness amounting in the aggregate to $60,000. Annexed to the chattel mortgage is a schedule which sets forth various articles which were used in connection with the operation of the hotel, such as knives, forks, spoons, coffee pots, china, linen, etc.

Under the issues as made by appellant's answer, it became necessary for plaintiff not alone to establish the validity of its chattel mortgage and that the articles enumerated therein were actually owned by the mortgagor but also to show that when the replevin writ was being executed by the sheriff, the property taken was that which was specifically referred to in the chattel mortgage. In other words, plaintiff had no right in replevin to take from defendant any other of the furnishings and chattels used by the tenant in the operation of the hotel.

When the premises known as the Majestic Hotel were acquired by defendant as owner, the Richbroson Hotel Company, Inc., was a tenant under a lease for a term of twenty-one years, commencing on February 1, 1925, which lease had been duly recorded. That lease had been assigned to defendant by the Durham Holding Corporation (its predecessor, lessor) by a recorded assignment, the defendant having become the owner of the hotel property and contents on April 30, 1926; and on that date it delivered to the Durham Holding Corporation a chattel mortgage which purported to cover all the personal property used in the conduct of the hotel and which, though leased to the tenant, actually belonged to the landlord. That chattel mortgage was filed the following day and regularly refiled thereafter.

The lease to the Richbroson Hotel Company, Inc., provided that the obligation of replacement and substitution rested upon the lessee, to whom was permitted the use of all the personal property belonging to the landlord upon the premises, "including the furniture and furnishings and personal property," a schedule of which was contained in five bound books signed by the parties thereto, and the lessee also agreed to keep all such property "in first class order and repair" and to replace the same from time to time as it might be lost, destroyed or seriously worn, "all with the intent and purpose that at the termination of this lease, the lessor shall receive from the lessee the furniture, furnishings and personal property in number, quality and nature similar to and equally as suitable for the operation of a first class hotel, as the furniture, furnishings and personal property delivered to the lessee by the lessor."

The lessee further agreed that no article should be removed from the premises without the written consent of the landlord except for

the purpose of repairing or replacing it with newer articles, and the lease provided that the tenant at the end or sooner termination of the lease would return to the lessor " all of the said personal property, furniture, furnishings, etc., so originally delivered to or replaced by it in good condition, reasonable wear and tear excepted, ravages of time and elements duly considered. The lessee further covenants that it will, from time to time, supply such furniture, bedding, linens, crockery, glass, silver and plated ware, and furnishings, etc., as shall be required for the purpose of maintaining the character and standard of the said premises as a first class hotel."

Finally, the lessee therein agreed that at the end or sooner termination of the lease it would deliver to the landlord all books and records so as to enable the lessor to take over the " premises and the business conducted thereon as a going concern," and the lease also provided that at the expiration of the term the lessee must sell to the lessor at the cost thereof, the stocks of supplies then on hand " which have not been used and which remain in the original packages."

While the tenant was in possession of the landlord's personalty (the above-mentioned chattel mortgage and lease having been properly filed and recorded), plaintiff on May 12, 1927, loaned to the tenant Richbrosen Hotel Company, Inc., $50,000, upon a four months' note indorsed by Mr. and Mrs. Copeland Townsend, who had a controlling interest in the capital stock of the tenant corporation, Mr. Townsend being likewise its president and in charge of the conduct of the hotel for the tenant. That note was wholly unsecured except in so far as it was indorsed by Mr. and Mrs. Townsend. At that time the tenant's business had not prospered, and it continued to lose money, its affairs having been taken over by a committee of creditors in July, 1927. Shortly before the note fell due, and on September 1, 1927, plaintiff nevertheless advanced a further sum of $10,000 to the tenant to enable it to pay the rent which came due on September first of that year. Its vice-president conceded that when plaintiff advanced this additional sum he knew that the tenant corporation was in a very precarious condition and it is clear that he had become familiar with the terms of the lease before this date. Within several days thereafter the loan from plaintiff to the tenant, which then aggregated $60,000, was diminished by the payment from the tenant of about $9,500, which in effect amounted to the return of very nearly all of the moneys advanced on September first.

The chattel mortgage, upon which plaintiff relies, sets forth the total indebtedness of $60,000, made up of these two loans. It is

dated September 1, 1927, but it was not filed until October 29, 1927, and purports to have been acknowledged on September 1, 1927, by Townsend as president, before Dorion, his nephew, and also assistant secretary and treasurer of the tenant corporation, as notary public. No reason is given for the delay of nearly two months in its filing. The indorsements of Mr. and Mrs. Townsend on the $50,000 note were canceled, though precisely when and upon what consideration does not appear.

Plaintiff likewise took the precaution of procuring a stockholders' consent, dated October 31, 1927, to the chattel mortgage signed by Mr. and Mrs. Townsend as the holders of not less than two-thirds of the total stock of the Richbroson Hotel Company, Inc., and a certificate of such consent was recorded and filed on November 1, 1927.

Certain unpaid creditors of the tenant had, as above stated, taken over the operation of the hotel from the lessee corporation during July, 1927. A trustee for the creditors under a later agreement had been appointed to supervise operations of the hotel in co-operation with plaintiff. On November 22, 1927, agreements were entered into, plaintiff being a party thereto, which contain recitals which refer to the terms of the lease, whereby the tenant was required " from time to time to supply such furniture, bedding, linens, crockery, glass, silver and plateware and furnishings, etc., as shall be required for the purpose of maintaining the character and standard of the leased premises as a first class hotel." This language again recognized defendant's title to the personalty on the premises. The agreement between plaintiff and Richbroson Hotel Company, Inc., also provided that the mortgagor (tenant) should have the right " to take and devote to the purposes of fulfilling " its obligation under the lease such property " covered by the mortgage as may be necessary therefor," but that " such taking and devotion to such use from time to time shall only be deemed to have taken place upon the receipt by the mortgagee from the mortgagor of a statement in writing to that effect describing in detail the property so taken and devoted to the fulfillment of the obligations under said lease."

It is, therefore, clear that during the time when the lease was in force plaintiff procured from the tenant a chattel mortgage upon property which, as proclaimed by the lease, belonged to the landlord who likewise had the right thereunder if any replacements at the termination of the lease remained unused and " in the original packages," to acquire them.

At the time when plaintiff's chattel mortgage was executed no specific articles were physically segregated from the supply and

allocated to the mortgage. It is true, however, that the schedule annexed to the mortgage refers to a quantity of knives, forks, spoons, china, glassware and linens as though they had been specifically selected and made subject to the chattel mortgage as distinguished from those covered by the lease and the several books, which describe and enumerate the articles in the hotel at the time the lessee took possession. The language of the lease moreover was all embracing and contemplated that all such articles should revert to the landlord upon the termination of the lease so that it would come into possession of a going hotel with such complete equipment as is requisite for a first class hotel.

The business, having been continued under the control of the representative of the creditors under agreements to which plaintiff was a party, fell into further financial distress and a petition in bankruptcy was filed in July, 1928, against the tenant Richbroson Hotel Company, Inc., wherein it was adjudicated a bankrupt, and a receiver and, later, trustee in bankruptcy operated the hotel until about August 1, 1928, when the premises were surrendered to the defendant landlord which had not received payment of rent. The landlord was then entitled to the possession of the complete equipment under the express language of the lease.

This action was commenced about August 9, 1928, when plaintiff's representatives with a deputy sheriff proceeded to the hotel under a replevin writ and removed therefrom, on August tenth, a number of chattels under the claim that plaintiff had a right thereto by virtue of its chattel mortgage. Apparently a great number of articles were taken, some of which have been found by the trial court not even to have been enumerated in the chattel mortgage. In reaching the judgment herein the learned trial court (a jury having been waived) could do little more than speculate as to which articles, if any, were actually covered by the chattel mortgage in question and which belonged to the landlord under the lease.

The burden, of course, rested upon the plaintiff and it was required to produce evidence which showed its right to seize and take into its possession specific articles. (*Oakland Manufacturing Co.* v. *Linde Co.*, 162 App. Div. 543, 545; *Meyer* v. *Smith*, 148 id. 840.) Certainly plaintiff must rest upon its own title, if any. It can assert no greater right to those chattels, as against defendant owner, than its insolvent mortgagor (the tenant corporation) had at the time of the seizure. It was bound by the provisions of the recorded lease. It " cannot go beyond or behind the written agreement in which the parties have deliberately set down their agreement and all the terms and conditions which either deemed material." (*Hale* v.

*Omaha National Bank,* 49 N. Y. 626, 632.) If the execution, delivery and recording of a mortgage were held to create a *prima facie* title to personal property against a person in possession, then a *prima facie* right to the property of another could be created by any one at will. (*Gibbs* v. *Childs,* 143 Mass. 103, 104.)

The proof falls far short of identifying any articles which belonged to the tenant when the chattel mortgage was executed as distinguished from the great quantity which were included in the lease and enumerated in five bound volumes. Few, if any, of the articles so taken were in original packages and there is no way of telling precisely which were or were not so wrapped up. Certainly, not many new articles had been purchased in 1927 prior to the date of execution of the chattel mortgage, as the tenant was then in dire financial straits. Indeed, it was conceded by Miss Osborn, plaintiff's witness, who was a bookkeeper and assistant treasurer of the tenant corporation, that the only articles purchased in that period, as well as during the period between September 1, 1927, and July, 1928, when the bankruptcy proceedings were instituted, were such as were actually needed for immediate use and service in the conduct of the hotel. She likewise stated that the so-called reserves on hand prior thereto were such as were required to run the hotel properly. After July, 1927, the hotel was being operated under the supervision of creditors, and purchases made thereafter, if any, were surely such as were required to furnish a proper supply for the going hotel business and to replenish the apparent shortage which then existed. When purchased they were mingled with articles in daily use.

The overwhelming weight of the evidence is that these supplies were, as might have been expected, so kept that the employees, being waiters, chambermaids and others, could as and when needed and from time to time take them for immediate use in the course of the hotel's business.

Plaintiff asserts that Mr. Townsend pointed out to the deputy sheriff the articles taken by him and designated them as having been covered by the chattel mortgage. There is no sworn proof in support of the correctness of any selections made by him. Plaintiff's witnesses admitted, moreover, that the newer and better articles were selected and taken. There appears to have been no way by which articles which bore the mark of the hotel could be differentiated. Mr. Townsend having died, no witness was called at trial on behalf of the plaintiff to give evidence that the articles so taken were actually covered by the mortgage and not by the lease, the testimony of Miss Osborn falling far short of such proof.

On the other hand, defendant produced witnesses, including an accountant who made a report based upon the books and records of the hotel tenant (produced at trial) which clearly indicated that neither on September 1, 1927, the date of plaintiff's mortgage, nor at any time thereafter was there a surplus in the equipment inventory over and above such articles as under the lease constituted the normal equipment of the hotel. On the contrary, his report shows that there was a very large shortage of equipment. Indeed, it stands to reason that the failing hotel company was in no position to and would not purchase idle equipment not regarded as essential to the actual operation of its business. Plaintiff in its brief concedes that supplies purchased after September 1, 1927, were for immediate use. The accountant's report indicated the shortgage of 17,881 pieces as of September 1, 1927, which exceeded $20,000 in value.

We are, therefore, constrained to hold that the plaintiff failed in its proof and has not substantiated its alleged right to the property which it has seized and which, having been sold, the parties agreed was of the value of $17,000. Defendant, having counterclaimed for the value of the property taken by plaintiff, is accordingly entitled to a judgment in its favor and against plaintiff for the sum of $17,000 on its first counterclaim, with interest from August 10, 1928.

The further counterclaim of defendant for damages to the hotel occasioned by these acts of the plaintiff in taking away the chattels, is not sufficiently established in the proof. There is evidence that defendant entered into a lease of the hotel premises with a new tenant in September, 1928, at the same rent as had been called for by the lease to the Richbroson Hotel Company, Inc., and that this new lessee continued in the operation of the hotel until the premises were sold in 1929. There is also proof that owing to the construction of the subway in front of the premises, and the competition of new and more modern hotels in the immediate neighborhood, the business of this hotel property was unremunerative so that in any event it was not substantially damaged by the acts of the sheriff under the replevin writ. Therefore, the second counterclaim was properly dismissed.

It follows that the judgment appealed from, in so far as it adjudges that possession of the chattels seized on the writ of replevin, except such as are in said judgment thereafter referred to, be awarded to the plaintiff, should be reversed, with costs, and the complaint dismissed, and judgment directed in favor of the defendant and against the plaintiff in the sum of $17,000 on the first counterclaim,

with interest thereon from August 10, 1928, with costs; and in so far as the judgment dismisses defendant's second counterclaim it should be affirmed.

FINCH, P. J., MERRELL and MARTIN, JJ., concur; McAVOY, J., taking no part.

Judgment appealed from, in so far as it adjudges that possession of the chattels seized on the writ of replevin, except such as are in said judgment thereafter referred to, be awarded to the plaintiff, is reversed, with costs, and the complaint dismissed, and judgment directed in favor of the defendant and against the plaintiff in the sum of $17,000 on the first counterclaim, with interest thereon from August 10, 1928, with costs; and in so far as the judgment dismisses defendant's second counterclaim it should be affirmed.