Henry Epstein, J.
Plaintiffs, sister and brother, sue for alleged conversion and/or replevin of shares of stock by defendants, members of the New York Stock Exchange. The fourth and eighth causes of action, based upon questionable theories *710 of possible profits from imagined transactions in futuro, were withdrawn at trial. All material allegations dealing with alleged misconduct were denied. Plaintiffs are musicians, defendants are stock brokerage firms. A younger brother of plaintiffs, Alfred, also a voice teacher, had been a frequent visitor and had “ hung around ” the offices of defendant Weingarten & Co. as far back as 1947. He says his mother (since deceased) had traded for him in his name. Apparently until the subject of the present controversy arose, neither plaintiff had made personal contact with Weingarten & Co. or any of their staff. All dealings in stocks by plaintiffs with defendants had been transacted through said Alfred who brought their account to said brokerage firm. Weingarten & Go. cleared their business through defendant Mabon & Co. whose members had no personal contacts with plaintiffs or their representatives whatever. For purposes of this case we may regard all transactions as if executed by and with Weingarten & Co. All actions taken by Mabon & Co. are to be regarded as those of the alter ego of Weingarten & Co. So regarded, the transactions of plaintiffs and their alleged grievances can be best analyzed and understood.
Plaintiffs claim that on or about May 25,1955 a certificate for 100 shares of United States Steel Corporation common stock was delivered to defendant Weingarten & Co. by Adeline Fioretti to be held as collateral for margin purchase of additional securities. Defendants are charged with wrongfully selling said stock ‘ ‘ for a price unknown to said plaintiff ’ ’ and claim is made for 200 shares (subsequent split after delivery to defendants) and/or their value at trial. A like cause of action is pleaded on behalf of Edward Fioretti, although he actually received and has retained the certificate for 100 shares of the split stock, which he has refused to deliver. Thus Edward Fioretti’s claim is for the original 100 shares or the value thereof. The proof reveals that Alfred Fioretti had himself conducted business with defendant Weingarten & Co., was the person entrusted by plaintiffs with their securities to deliver to defendants, that such securities were delivered by Alfred Fioretti for sale, that they were sold for the account of plaintiffs and notices of said sale duly forwarded to plaintiffs with the proceeds by mail on May 27, 1955. These checks were deposited by plaintiffs in savings bank accounts where they remained until they had received interest. No question was raised with regard to the transactions until later when the stock had risen in value. Then the first complaint was made, not to defendants, but to the New York Stock Exchange, in a letter *711 dated June 20,1955. Plaintiffs had realized a profit on the sale of their stock, but sought to concoct a fraudulent plan for reinstating their ownership. The intended victims of their fraudulent scheme are defendants.
The key to plaintiffs’ fantastic claim and their case against defendants is found in the alleged copies of letters claimed to have been mailed to defendants. Plaintiffs testified always to having accompanied one another to the mailbox or the branch post office in mailing the purported originals to defendants. They also corroborate each other in the tale that one or the other wrote in pencil, or with carbon paper underneath, the originals, thus retaining always a longhand copy of the original correspondence. This, they both said, was a customary practice. Yet no such copies were retained or made of letters to the Stock Exchange, or to the Securities and Exchange Commission, or to the District Attorney, complaining of defendants. Only alleged copies of the letters to defendants were kept, none of which defendants ever received. At least this is the substance of testimony of defendants’ witnesses. This court concludes that the alleged copies were studiously manufactured by plaintiffs to support an otherwise incredible story; that the testimony of plaintiffs to support such story is false and contradicted by the overwhelming weight of believable and documentary evidence. The only letter, received on June 11, 1955, by defendants Weingarten & Co. contained no reference whatsoever to the transaction on which the complaint was based. When asked by the court in the course of trial to produce any other such claimed copies, plaintiffs obligingly came back the next day with another carbon of a letter theretofore never produced, under date of August 26, 1955. Even this letter creates a conflict in plaintiffs’ testimony and further lends support to the claim that the entire case of plaintiffs is manufactured. Because of the nature of the transaction and claims of plaintiffs, defendants retained copies of envelopes in the longhand of one or other of the plaintiffs. These had notations by the senior partner of defendant Weingarten & Co. of the contents — made at the time of receipt.
Plaintiffs’ story of their dealings with defendants, their change of customers’ representation in defendants’ office, their change of attorneys — is only consistent with a conclusion that plaintiffs have endeavored to recover what they were never entitled to — profits because of arise in price of the stocks after sale. Testimony of defendants’ witnesses Macht (before trial), MacAran, Robert Leisher, Kingsley, Mrs. Leisher and Sanford Stern, is consistent and wholly credible. Confirmations of all *712 transactions were regularly sent to plaintiffs’ home address. No protest or objection was ever made. Regular monthly statements were sent with no objection until this action was begun in February, 1957. The substance of important allegations in the complaint (dealing with fourth and eighth causes of action) were at the trial withdrawn and attributed to false suggestions by prior counsel against whom also plaintiffs had brought charges. Yet the evidence at this trial shows that the plaintiffs’ written instructions to said prior counsel had embodied the very claims set forth in the complaint which were on this trial withdrawn. This court cannot accept the testimony of the plaintiffs and their witnesses in support of false charges investigated by and refused any credence by the Securities and Exchange Commission, the District Attorney of New York County, the Attorney-General of New York State, the New York Stock Exchange and the Association of the Bar of the City of New York.
At the opening of this case plaintiffs’ counsel elected not to pursue the claim for conversion. No cause of action for an accounting or in replevin has been made out. Plaintiffs relied heavily on the pretended lack of authority of Alfred (the younger brother) to conduct their transactions. Yet there is no Stock Exchange rule which forbids a customer dealing through or with the agency of a member of his or her family. Ostensible authority had been accorded Alfred from the very outset of the transactions with defendants. Between February 4, 1956 and January 24, 1957, no protest or complaint was received by defendants and plaintiffs did not send a word about the regular statements of their respective accounts. The threat to bring this suit was quite properly disregarded by defendants. Replevin must be based on a right to possession at the time of the commencement of the action (Oakland Mfg. Co. v. Linde Co., 162 App. Div. 543, 545). Plaintiffs have failed to meet this basic requirement in proof. Where, as in this case, a stockbroker’s responsibility for damages is sought to be imposed, the difference in price at a reasonable time after the alleged wrongful sale would be the measure (Baker v. Drake, 53 N. Y. 211, 217; Jones v. National Chautauqua County Bank, 272 App. Div. 521, 529; Galigher v. Jones, 129 U. S. 193; 1 Black, Stock Exchanges, p. 413). Plaintiffs here could have avoided loss entirely, but took no action whatsoever, except the thinly-veiled attempts to blackmail defendants. On the facts revealed on this trial plaintiffs are defeated also by the doctrine of equitable estoppel clearly stated in Rothschild v. Title Guar. & Trust Co. (204 N. Y. 458, 464). Every conclusion herein set forth dealing with the United States Steel Corporation stock transactions applies with *713 equal force to the second and sixth causes of action, dealing with Sunray Mid-Continent Oil, Baldwin-Lima-Hamilton stock and the Pennsylvania Bailroad stock. The sales of some of these stocks were duly confirmed without objection or question. The last named two were delivered unconditionally on request and form no basis for any claim. There having been regular monthly accounts stated, no action for an accounting may be maintained (Robinson v. Miller, 210 App. Div. 450; Rodkinson v. Haecker, 248 N. Y. 480).
Complaint dismissed on the merits, with costs. Submit judgment.