MYRON W. ROBINSON, Respondent, *v.* NATHAN J. MILLER and Others, Copartners Doing Business under the Firm Name and Style of MILLER & COMPANY, Appellants.

First Department, October 31, 1924.

Principal and agent — accounting — action based on stock brokerage transactions with defendants — claim for accounting based on charge of more than six per cent interest in some instances — monthly statements of accounts rendered, showing interest charges, were not objected to — final account was not objected to and check received from defendants was retained — final account constitutes account stated — plaintiff is precluded by account stated from maintaining this action — plaintiff failed to show that interest charges were usurious — under General Business Law, §§ 371 and 379, interest may, under certain circumstances, be charged at more than six per cent — limitation of actions — if charges were usurious, accounting is barred under General Business Law, § 372, since action was not commenced within one year after final account.

An action by a customer of a stock brokerage house for an accounting of the transactions between him and the stockbrokers based on an alleged overcharge of interest in certain instances, cannot be maintained where it appears that during the period of the transactions between the parties the stock brokerage house rendered monthly statements showing the interest charges, which statements were retained by the customer who made no objection thereto, and that when the account was finally closed out the stock brokerage house rendered a final account to the customer and sent him a check for the balance due which he retained without objection or exception to the account or to the interest charges.

The statement made by the stock brokerage house of the final account of the transactions between the parties, which together with a check for the balance due to the customer was retained by the customer without objection or exception

on his part, constitutes an account stated and precludes the customer from thereafter maintaining an action for an accounting in the absence of any evidence of fraud or mistake in connection with the transactions between the parties.

In this action the plaintiff failed to show that the interest charges which were at a higher rate than six per cent were usurious. There is no presumption that an interest charge greater than six per cent is usurious, since under sections 371 and 379 of the General Business Law interest may be charged at a greater rate than six per cent in certain instances, and the plaintiff failed to meet the burden cast upon him to show that the interest charges made by the defendants in excess of six per cent were usurious and made with illegal intent.

Furthermore, if such interest charges were illegal when made, this action, which was commenced nearly two years after the rendition of the final account by the defendants, was barred by section 372 of the General Business Law, which provides that an action to recover usurious interest must be brought within one year after payment.

APPEAL by the defendants, Nathan J. Miller and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of February, 1924, upon the decision of the court rendered after a trial at the New York Special Term requiring the defendants to render a true and full account of the disposition of moneys and property received by them from the plaintiff and of their actions and transactions as stockbrokers and agents of the plaintiff between the 15th day of September, 1916, and the 15th day of January, 1921.

*Louis Werner* [*Osmond K. Fraenkel* of counsel], for the appellants.

*James S. McDonogh*, for the respondent.

MERRELL, J.:

The claimed dereliction on the part of the defendants upon which the plaintiff claims to be entitled to the equitable relief granted by the interlocutory judgment appealed from is that the defendants, during their transactions as the agents of the plaintiff, charged and received from the plaintiff interest in excess of six per cent per annum on certain balances claimed to be due them from the plaintiff, and that the transactions of the defendants with the plaintiff were usurious. Upon the trial the plaintiff offered no evidence concerning the transactions carried on by the defendants in his behalf beyond proving that in some instances the defendants had charged and received interest in excess of the legal rate. Indeed, it was virtually conceded by the defendants upon the trial that interest had on some occasions been charged the plaintiff at a rate greater than six per cent, the defendants, however, not admitting that such fact was in any way relevant to the litigation, or that by charging such excess of interest over the legal rate the defendants were guilty of wrongful or illegal action. The evidence dis-

closed that during the period of nearly five years when the defendants were acting as the agents of the plaintiff as his stockbrokers monthly accounts of their transactions as plaintiff's agents were rendered to the plaintiff showing in detail the particulars with reference to the purchase and sale of any stock by defendants for plaintiff, giving the name of the broker, the stocks purchased or sold, moneys advanced, interest charged, and other particulars as to each transaction. Upon the trial the plaintiff admitted the receiving of these periodical statements from the defendants and that generally when stocks were bought or sold by the plaintiff through his said agents he received a notice on the day following covering the purchase and sale and with such statements was given the name of the stock, the price at which it was bought, and the name of the broker with whom the transaction was had, and that each month the plaintiff was given a statement showing the ledger condition of his account which would give the purchases and sales during the preceding month and the balance of the month, and that such statements gave the names of the stocks on hand, and that continued down to the end of his dealings with and through the defendants. Plaintiff admitted that he received such statements and generally looked at them and examined them; that he kept them and did not object to them in any way at any time. The plaintiff further admitted sending a letter to the defendants in closing out his account and receiving from the defendants a check of $855.62, which check plaintiff deposited. Plaintiff also admitted having received along with such check a statement showing the closing of his account with the defendants. The various statements received by the plaintiff from the defendants were introduced in evidence and plaintiff testified that he believed that no transaction was left out of those statements, and that as far as plaintiff knew the statements given him from time to time reflected the transactions had.

The final statement made by the defendants to the plaintiff in writing at the time of closing out their account with the plaintiff, on January 12, 1921, brought forward the balance carried from the preceding statements and balanced the account between the parties.

At the close of the evidence the court rendered its decision finding that the plaintiff was entitled to an interlocutory judgment against the defendants for an accounting by them of their transactions as stockbrokers and agents of the plaintiff during the period aforesaid. In connection with such decision and at the request of the defendants the learned court at Special Term found as follows:

" 1. That at all times hereinafter mentioned, the defendants

Nathan J. Miller, Louis S. Oppenheimer and Philip J. Levy, were co-partners, doing business as stockbrokers under the firm name and style of Miller & Company, in the Borough of Manhattan, City of New York and elsewhere.

" 2. That at all times hereinafter mentioned, said defendants acted and were acting as the plaintiff's stockbrokers and agents in and about the purchases and sales of various stocks and securities upon commissions; that the plaintiff, on or about and between the 15th day of September, 1916, and the 15th day of January, 1921, paid over to said defendants various sums of money and delivered to said defendants various stocks and securities in connection with said purchases and sales.

" 3. That immediately after the purchase or sale of any stock or security defendants sent to plaintiff a statement setting forth the name of such stock or security, the purchase or selling price and the name of the broker with whom the transaction was had.

" 4. That monthly during the continuance of plaintiff's trading with defendants, defendants rendered statements of account showing the financial transactions had during the preceding month, together with the interest charged by defendants to plaintiff during such month, the balance owing by plaintiff to defendants at the end of the month and the securities or stocks carried by defendants for plaintiff at the end of such month.

" 5. That plaintiff examined said statements of account.

" 6. That plaintiff retained said statements of account without exception.

" 7. That on or about the 12th day of January, 1921, plaintiff's account with defendants was closed by the payment to plaintiff by defendants of $855.62.

" 8. That at the time plaintiff received said $855.62 from defendants he also received a statement of account closing his account and showing a balance of $855.62 to be due from defendants to plaintiff.

" 9. That plaintiff examined said statement of account and retained the same without exception.

" 10. That in some instances defendants charged interest in excess of 6% per annum and that plaintiff knew this at the time such charges were made and made no exception thereto. * * *

" 12. That there was no agreement between plaintiff and defendants for the charging of any usurious or unlawful rates of interest. * * *

" 14. That there was no evidence of any fraud or error in the accounts rendered by defendants to plaintiff."

Notwithstanding such findings of fact made by the trial court,

the court refused to find, as requested by the defendants, that on or about January 12, 1921, the account was duly stated between the plaintiff and the defendants covering all the transactions between the parties. Such refusal, we think, constituted error requiring a reversal of the interlocutory judgment from which the defendants have appealed. We think that the plaintiff was bound by the statements of account made to him by the defendants and that by the rendition of the final account by the defendants of their transactions as plaintiff's agents, made and delivered to the plaintiff on January 12, 1921, accompanied by the defendants' check for $855.62, the balance stated to be plaintiff's due upon such accounting, and which statement of account was examined and retained by the plaintiff without objection or exception on his part, and the plaintiff having retained the check sent him by the defendants accompanying such account, constituted an account stated and precluded the plaintiff from maintaining his present action for an accounting, which action was commenced nearly two years after the rendition of such account by the defendants. (*Slayback* v. *Alexander*, 179 App Div. 696; *Little* v. *McClain*, 134 id. 197; *Knickerbocker* v. *Gould*, 115 N. Y. 533; *Stenton* v. *Jerome*, 54 id. 480.) Upon the trial there was an entire absence of any evidence suggesting fraud or mistake in connection with defendants' dealings with the plaintiff or in the rendition of such account. Indeed, the court, at the request of the defendants, expressly found: " That there was no evidence of any fraud or error in the accounts rendered by defendants to plaintiff." Apparently the only fact found by the court upon which the interlocutory judgment was based was that in some instances the defendants had charged interest in excess of six per cent. The charging of interest at a greater rate than six per cent is not in all cases usurious. Undoubtedly, if the transaction was a loan of moneys by the defendants to the plaintiff, they could not legally have charged a greater rate than six per cent for the use of the money. However, under certain conditions the defendants were permitted to charge a greater rate of interest than that ordinarily allowed by law. For example, if the defendants had borrowed the money on call for the accommodation of the plaintiff, they would have been permitted to charge him the rate of interest which they would have had to pay. The usury statute (Gen. Business Law, § 371) applies only to loans. By section 379 of the General Business Law interest is permitted on advances on collateral security, and it is by said section provided that in any case where advances of money repayable on demand are made in an amount not less than $5,000 upon warehouse receipts, bills of lading, certificates

of stock, certificates of deposit, bills of exchange, bonds, or other negotiable instruments pledged as collateral security for such repayment, it is lawful to receive or to contract to receive and collect as compensation for making such advances any sum to be agreed upon in writing by the parties to the transaction. Unquestionably section 379 applies to brokers' loans to their customers, and brokers may require their customers to repay debit balances at any time. The courts have held that merely because a greater rate of interest than that allowed by statute is charged there is no presumption of usury. We do not think the plaintiff met the burden cast upon him by showing that the interest charges made by the defendants in excess of six per cent were usurious and made with illegal intent. Usury cannot be presumed nor be established by inference. (*Rosenstein* v. *Fox*, 150 N. Y. 354; *Morton* v. *Thurber*, 85 id. 550; *Brown* v. *Robinson*, 224 id. 301.) In each of the accounts rendered by the defendants to the plaintiff interest was charged. The plaintiff had a full opportunity to object to such charges but raised no question with reference thereto, retaining such statements without objection or exception.

So far as excess of interest is concerned, even though such charge was illegal at the time made, under section 372 of the General Business Law action to recover the same must be brought within one year after payment of such usurious interest. The right of the plaintiff to recover of the defendants any excess of interest over that allowed by law terminated long before the commencement of the present action. (*Palen* v. *Johnson*, 50 N. Y. 49.) This limitation applies not alone to actions at law, but to equitable actions as well. (*Gilleran* v. *Colby*, 164 App. Div. 608.)

We are, therefore, of the opinion that plaintiff failed to establish a cause of action against the defendants requiring the defendants to account as agents for the plaintiff, and that the defendants were fully protected by the statement of account rendered to plaintiff on January 12, 1921, and by his acceptance and retention of such account and of the moneys then paid him by the defendants as the balance due in accordance with such statement.

The interlocutory judgment appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.