James S. McDonogh, Respondent, *v.* William A. Paine and Others, Copartners Doing Business under the Firm Name and Style of Paine, Webber & Co., Appellants.　(No. 1.)

James S. McDonogh, Respondent, *v.* William A. Paine and Others, Copartners Doing Business under the Firm Name and Style of Paine, Webber & Co., Appellants.　(No. 2.)

First Department, May 1, 1925.

**Brokers — stockbrokers — action by customer for accounting and to recover excessive interest charges — brokers acknowledged part of illegal charges — account stated not shown by current monthly statement in which illegal interest charges were concealed under "expenses" and "commissions"— account stated not shown by final statement of account containing said concealed illegal interest charges which was objected to by plaintiff and on which plaintiff paid amount claimed to be due in order to secure release of his securities — other fraud shown — accord and satisfaction not shown by acceptance of check for excessive interest charges where amount of check was *objected to —* plaintiff is entitled to interlocutory judgment directing accounting.**

In an action by a customer of a stock brokerage concern for an accounting and to recover excessive interest charges, part of which were admitted by the brokers, in which the defendants relied on the defense of an account stated, evidence of current monthly statements of account in which illegal interest charges were fraudulently concealed under the term "expenses" and the term "commissions" did not establish accounts stated, and likewise the final statement of the account containing the same illegal charges concealed in the same manner did not constitute an account stated, since there was not only fraud in the account, but the plaintiff promptly objected to the account on the ground that it did contain illegal and excessive charges and paid the amount claimed to be due for the sole purpose of securing a release of the securities held by the defendants.

The acceptance by the plaintiff of a check purporting to cover the full amount of the excessive interest charges which was sent to him after he had demanded that the defendants repay him the amount so charged to his account did not constitute an accord and satisfaction, since, upon receipt of the same, he promptly protested that the check did not cover the full amount of the excessive interest charges.

Since a fiduciary relationship was established between the plaintiff and the defendants, and the statements rendered by the defendants were not accounts stated, and since there were other fraudulent acts on the part of the defendants in reference to plaintiff's account, he is entitled to an interlocutory judgment directing an accounting.

Appeal in each of the above-entitled actions by the defendants, William A. Paine and others, from an interlocutory judgment of the Supreme Court in each action in favor of the plaintiff therein, entered in the office of the clerk of the county of New York on the 4th day of April, 1924, upon the decision of the court, rendered

after a trial upon the merits at the New York Special Term, granting an accounting to the plaintiff against the defendants in each action.

*Sullivan & Cromwell [Philip L. Miller* of counsel; *Edward H. Green* with him on the brief], for the appellants.

*J. Edward Murphy,* for the respondent.

MERRELL, J.:

The plaintiff was a customer of the firm of Paine, Webber & Co., who are stockbrokers. During the period of dealing with the said firm the membership thereof changed and it was, therefore, necessary for the plaintiff to bring the two actions. The complaints in the two actions are similar in form, except as to the allegations therein contained as to the defendants' collecting excessive interest. In the complaint in the first action the plaintiff alleges that the defendants charged and received excessive interest " in part as interest and the balance under the guises of ' commissions ' and ' additional expense,' " whereas, in the second action the plaintiff alleges that the defendants charged and received excessive interest under the guise of " commissions."

It is alleged that various transactions occurred between the plaintiff and his said stockbrokers during the periods set forth in the complaints, respectively, and that unlawful charges were made by the defendants for interest, and that the defendants carried on fictitious dealings and reported the same to be genuine, and that plaintiff had demanded an accounting, and that defendants had refused to account.

In their answers the defendants admit the business relations between the parties, as alleged in the complaints, and that the dealings were had as therein alleged. They, however, deny the allegations of the complaint concerning excessive interest charges and fictitious dealings, and deny that they refused to account. As affirmative defenses in each action the defendants in their answers set up, *first,* that the plaintiff's claims were fully settled and discharged before the commencement of the action; *second,* that the defendants rendered an account stated to the plaintiff; *third,* that the defendants repaid all excessive charges made by the defendants for interest; and, *fourth,* that the causes of action of the plaintiff to recover excessive interest charges were barred by the one-year Statute of Limitations. (See General Business Law, § 372.)

The record of the trial discloses that the plaintiff was a customer of the defendants, and that the defendants, during the period from November 2, 1916, when the dealings commenced, until October 28, 1920, when the plaintiff withdrew his securities and ceased to be a customer of the defendants, rendered monthly

statements of the account between the parties, and that the same were received by the plaintiff, except during a few months when the latter was in the army during the World War. The record also shows that during their dealings with the plaintiff the defendants charged excessive rates of interest and compounded their interest charges monthly. At times these interest charges were included in " expense " items, and at other times with " commissions." In this way the unlawful interest was charged by the defendants in a manner so as to deceive and mislead the plaintiff. At times the plaintiff charged the defendants with having collected as high as twelve per cent interest. The plaintiff testified, and the defendants did not deny, that on one occasion when the plaintiff accused the managing clerk of the defendants with having charged illegal interest, the defendants' clerk then claimed that they had a right to charge such interest where the account was inactive, and that all brokers did the same thing and that it was necessary in order to enable them to do business. It appeared, however, that the defendants, upon the insistence of the plaintiff, finally admitted that they had charged such interest wrongfully and unlawfully and to the extent of $191.95 reimbursed the plaintiff for interest which they had illegally charged and received from him. This, however, was not under the written admission by the defendants that there had been an illegal charge, and when the plaintiff complained that the amount which they had repaid him did not cover the full amount of the excessive interest charges, they refused to alter their letter remitting the $191.95 but agreed to make it right with the plaintiff.

The main defense urged by the defendants to plaintiff's claim for an accounting in these actions was that the monthly statements of the account with the plaintiff constituted accounts stated, and that the plaintiff, receiving the same without objection, cannot now claim that the true account between the parties was other than as stated in the monthly statements. It is also claimed by the defendants that the payment of the $191.95 for excessive interest constituted an accord and satisfaction, and that the plaintiff cannot claim more than the sum thus paid. The defendants, appellants, rely chiefly upon the decision of this court in a similar case (*Robinson* v. *Miller*, 210 App. Div. 450), decided by this court in October, 1924, in which this court held under a similar complaint that there was an account stated between the parties and that the interest above six per cent was not shown to have been improperly charged. It seems to me that the case of *Robinson* v. *Miller* is clearly distinguishable from the cases at bar in several respects. In the *Robinson* case there were monthly statements of account furnished as in the cases at bar, but in those monthly state-

ments between the brokers and the customer the excessive interest was not concealed in other items, such as " commissions " or " additional expense," and finally when the dealing was closed a final account was rendered by the brokers to the customer, Robinson, stating the amount of the balance, the customer's due, and inclosing a check from the brokers therefor, which the customer received and cashed without any objection or remonstrance, either as to the items of the account rendered or as to the amount of the check paid to him as balance his due. After waiting two years, Robinson brought action for an accounting. This court held that the final account rendered to the customer was an account stated and, having received and retained the account and the check accompanying the same covering the balance his due without objection, Robinson was bound thereby as an account stated, and was precluded from thereafter maintaining an action for an accounting. The decision of this court was also based upon the fact in the *Robinson* case, which was not present in the actions at bar, that there was an entire absence of evidence suggesting fraud or mistake in connection with the brokers' dealing with the customer or in the rendition of the account. In the *Robinson* case the trial court expressly found that there was no evidence of any fraud or error in the accounts rendered by the defendants to the plaintiff. In the cases at bar the plaintiff charged, and the evidence seems to indicate, that the defendants were guilty of fraud and concealment, and that the defendants had failed to pay over to him dividends which the defendants had received on certain stocks belonging to the plaintiff, and it was only after several months' negotiations that the plaintiff was able to obtain from the defendants the amounts which they had received as such dividends. It was also claimed by the plaintiff, and the evidence would seem to indicate, that the defendants had closed out certain securities which they held for the account of the plaintiff without first notifying the plaintiff that additional margins were required. At that time the plaintiff was in the country, and the plaintiff claimed that his securities were actually sold before he received notice that additional margins were required. In the cases at bar the evidence disclosed that when the plaintiff closed his dealing with the defendants he sent his attorney to the defendants with a blank check with authority to fill out the same in the amount claimed by the defendants as the amount their due, and at that time plaintiff wrote the defendants that in paying them the amount claimed by them he did so with the express understanding on the part of both parties that the plaintiff did not admit the correctness of the defendants' claim, but paid the amount claimed by

the defendants only for the purpose of obtaining possession of securities of the plaintiff which the defendants held. At that time, October 27, 1920, the plaintiff wrote the defendants as follows: "I am satisfied that you have been making excessive charges for interest, but have not yet arrived at the amount of such excesses. When I ascertain the amount of such excess I will take it up with you and will expect you to promptly repay same to me." In reply thereto and on the day following, the defendants wrote the plaintiff stating that his attorney had called upon them and that his blank check had been filled out for the sum of $619.50, which was the amount which the defendants claimed was plaintiff's debit balance to them, and with their letter the defendants inclosed a statement of the account as they claimed to understand it. The defendants also stated in their letter that at that time they were unable to return all of the certificates of stock which belonged to the plaintiff, but would send them to his bank along with his check for collection. It is also stated in their letter of October 28, 1920, that they would be glad to take up the matter of interest at any time and that they felt sure that they could satisfy the plaintiff that their interest charges for carrying the accounts had not been excessive. On February 11, 1921, the plaintiff again wrote the defendants asking them to adjust the matter of excess interest which had been charged to his account and which he was forced to pay to have his stock released the previous October, and in reply thereto the defendants' representative wrote the plaintiff that they would be glad to talk with the plaintiff as to the interest on his account and would arrange a conference at any time that suited the plaintiff's convenience. The matter dragged along for some time, and the evidence shows frequent telephonic communications between the parties, and finally on March 16, 1921, the defendants' representative, Foster, wrote the plaintiff stating that "We have carefully figured your account from the beginning, and have credited $191.95, check for which we inclose herewith." And the check of Paine, Webber & Co. was inclosed in said letter.

The evidence very clearly shows that when the monthly statements were rendered by the defendants to the plaintiff they were no more than accounts current and were attended with fraud and concealment in that the excessive interest charges were concealed in other items, and it also appears that when the final account was rendered the plaintiff objected thereto and, in effect, stated that the amount which he paid to the defendants as the amount which they claimed to be their due was paid under protest and without waiving any of his rights. I think this certainly robs the transaction of any feature of an account stated. The cases

are also distinguishable from the *Robinson* case by the fact that in the latter case there was no evidence showing that illegal interest had been collected, whereas, in the cases at bar by the repayment of the interest the defendants acknowledged that the same had been wrongfully collected by them.   The fiduciary relationship of principal and agent having been established and admitted by the pleadings, I think the plaintiff was entitled to an interlocutory judgment in each case requiring the defendants to account, and that the defendants failed to establish either that there was an account stated which precluded the plaintiff from bringing the present actions, or that there was any accord and satisfaction as to the interest returned by the defendants to the plaintiff.   (*Lockwood* v. *Thorne*, 18 N. Y. 285; *Newburger-Morris Co.* v. *Talcott*, 219 id. 505; *Stenton* v. *Jerome*, 54 id. 480.)   The case of *Stenton* v. *Jerome* (*supra*) was quite similar, so far as the account was concerned, to the cases at bar.   In that case the plaintiff claimed that the defendants had sold some of her stocks without proper demand for margins and without giving her notice of the time and place of sale, and the plaintiff closed her account at the request of the defendants, stating that she was in need of certain bonds which the defendants still held for her, and paid the defendants the balance which they claimed to be their due.   In the cases at bar the plaintiff claims that the defendants wrongfully sold his stock without proper demand for margin and without notice of the time and place of sale, and at the time the account was closed the plaintiff wrote the defendants that he was paying them the amount claimed by them, but did not admit the correctness of their claim, but paid them for the purpose of having his stock released. The Court of Appeals in the *Stenton* case held that in order to constitute an account stated there must be a mutual agreement between the parties as to the allowance and disallowance of their respective claims and as to the balance as struck in the final adjustment of the whole account; that there must be a meeting of the minds as in the making of any contract, and that both must assent to the account and the balance stated as correct; that in all cases there must be proof in some form of an express or implied assent to the account rendered before the parties sought to be charged thereby can be held, and the court held that the payment by the plaintiff of the balance of the account claimed by the defendants did not preclude her from recovering damages, and that the plaintiff had a right to rescue her property even by the payment of a sum wrongfully exacted, and that an action would lie to recover back money thus paid.   (See, also, *Kilpatrick* v. *Germania Life Ins. Co.*, 183 N. Y. 163.)

37

The plaintiff also calls attention to the provisions of section 392 of the Penal Law, which provides that every person, firm, association, copartnership or corporation shall furnish, upon written demand, to any customer for whom such person, etc., has executed an order for the purchase or sale of securities, a written statement containing the names of the persons from whom such property was bought or to whom it has been sold, as the case may be; the time when and the place where and the amount of and price at which the same was either bought or sold; and that in the event of refusal or neglect so to do within forty-eight hours after demand, such refusal shall be *prima facie* evidence that such purchase or sale was made in violation of the statute. The evidence shows that the plaintiff repeatedly called upon the defendants for the information as to the persons from whom the defendants obtained the stocks claimed to have been purchased for the account of the plaintiff, the amount paid therefor, etc., which information the defendants failed to give. The failure to furnish such statement within forty-eight hours after demand is *prima facie* evidence that such purchase and sale were made in violation of article 36 of the Penal Law, relating to "Bucket Shops," which violation constitutes a felony against which the Statute of Limitations against prosecution does not run for the period of five years. (See Code Crim. Proc. § 142.)

The interlocutory judgments appealed from should be affirmed, with costs to the respondent in each case.

CLARKE, P. J., FINCH, MARTIN and BURR, JJ., concur.

In each case: Interlocutory judgment affirmed, with costs.